UNITED STATES BANKRUPTCY COURT         NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                           :
In re:                            :        Chapter 7
      Poonam Keswani,              :
                           :
               Debtor.         :        Case No. 20-10315-JLG
------------------------------------------------------------------------x
Deborah J. Piazza, as Chapter 7 Trustee of        :
Poonam Keswani,                   :
                           :
              Plaintiff,       :        Adv. Pro. No. 20-01345-JLG
                           :
      -v-                            :
                           :
Poonam Keswani,                   :
                           :
             Defendant.      :
------------------------------------------------------------------------x

## MEMORANDUM DECISION GRANTING TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DISMISSING COUNTS ONE THROUGH FOUR OF THE COMPLAINT PURSUANT TO FEDERAL RULE OF <u>BANKRUPTCY PROCEDURE 7056</u>

A P P E A R A N C E S:

POONAM KESWANI
*Pro se*
50 Riverside Blvd, Apt 10N
New York, New York 10069


TARTER KRINSKY & DROGIN LLP
*Attorney for Deborah J. Piazza, as Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
<u>By</u>:    Jill Makower, Esq.

**HONORABLE JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE:**

## Introduction

In this adversary proceeding, Deborah J. Piazza, the chapter 7 trustee (the "**Trustee**") of

the estate of Poonam Keswani (the "**Debtor**" or "**Keswani**"), is suing the Debtor to deny her a

discharge pursuant to various subsections of section 727 of title 11 of the United States Code (the

"**Bankruptcy Code**"). In her five-count Complaint,[1] the Trustee seeks relief under Bankruptcy

Code sections 727(a)(2) (Count One), 727(a)(3) (Count Two), 727(a)(4)(A) (Count Three),

727(a)(4)(D) (Count Four), and 727(a)(5) (Count Five).

Before the Court is the Trustee's motion for partial summary judgment on Count One

through Count Four of the Complaint (the "**Motion**").[2] In broad strokes, the Trustee contends she

is entitled to a judgment denying the Debtor her discharge because the Debtor failed to: (i)

disclose personal and business financial records; (ii) obey this Court's production order; and (iii)

provide truthful statements in connection with her bankruptcy case.  In the Motion, the Trustee

also seeks relief under section 727(a)(6)(A) of the Bankruptcy Code but did not plead a claim

under this subsection in the Complaint. She contends summary judgment under section

727(a)(6)(A) is nevertheless warranted, however, because the same facts set forth in support of

Count One through Count Four of the Complaint also support summary judgement on this

---

[1]    *See Chapter 7 Trustee's Complaint Objecting to the Debtor's Discharge Pursuant to 11 U.S.C. § 727* [AP ECF No. 1] (the "**Complaint**"). Citations to "[AP ECF No. _]" refer to electronic filings in this adversary proceeding (Case no. 20-01345 (JLG)). Citations to "[ECF No. _]" refer to electronic filings in the Debtor's bankruptcy case (Case no. 20-10315 (JLG)).

[2]    *See Notice of Plaintiff-Trustee's Motion for Partial Summary Judgment* [AP ECF No. 22]. In support of the Motion, the Trustee submitted the following: (1) *Plaintiff-Trustee's Memorandum of Law in Support of Motion for Partial Summary Judgment* [AP ECF No. 23] (the "**Memorandum**"); (2) *Affirmation in Support of Trustee's Motion for Partial Summary Judgment Denying Discharge* [AP ECF No. 22-1] ("**Makower Affirmation**" or "**Makower Aff.**"); (3) *Trustee's Pre-Motion Letter Pursuant to Local Bankruptcy Rule 7056-1* [AP ECF No. 19] (the "**Pre-Motion Letter**"); and (4) *Plaintiff Trustee's Statement of Undisputed Material Facts Pursuant to Local Bankruptcy Rule 7056-1* [AP ECF No. 24] (the "**7056-1 Statement**").

provision, and the Debtor will not be prejudiced if the Court considers the new claim. The

Debtor did not file a response to the Motion.

As explained below, the Court grants the Trustee summary judgment on Counts One,

Two, Three, and Four of the Complaint. The Court also finds that the Complaint should be

deemed amended under Federal Rule of Civil Procedure 15(b) to permit the Trustee to assert a

claim under section 727(a)(6)(A) of the Bankruptcy Code.[3] For the reasons set forth below, the

Court grants the Trustee summary judgment on this claim as well. Accordingly, the Court grants

the Motion and denies the Debtor her discharge in bankruptcy.

## Jurisdiction

The Court has jurisdiction over the Motion pursuant to 28 U.S.C §§ 1334(a) and 157(a)

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,

C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## Background[4]

The Bankruptcy Case

On January 31, 2020 (the "**Petition Date**"), the Debtor, represented by counsel, filed a

voluntary petition for relief under chapter 7 of the Bankruptcy Code in this Court. *See Debtor's*

*Voluntary Chapter 7 Petition* [ECF No. 1]. On February 3, 2020, Deborah J. Piazza was

appointed chapter 7 trustee for the Debtor's estate (the "**Estate**") and qualified for and accepted

that appointment. *See* 7056–1 Statement ¶¶ 1-2. On February 14, 2020, the Debtor filed her

Statement of Financial Affairs ("**SOFA**") and Schedules A/B through J-2. [ECF No. 7]. She filed

---

[3]    Federal Rule of Civil Procedure 15 ("**Rule 15**") is made applicable to this case by Federal Rule of Bankruptcy
Procedure 7015 (the "**Bankruptcy Rules**").

[4]    The underlying facts are not in dispute and many are set forth in the 7056–1 Statement. The Debtor did not
contest the facts in that statement. As such, those facts are deemed admitted. *See* LBR 7056–1(d).

amended and further amended Schedules A/B and C on March 2, 2020 and April 17, 2020 [ECF

Nos. 8, 21], and filed further amended Schedules A/B on May 10, 2020 [ECF No. 32].[5] In her

Amended Schedules, the Debtor disclosed that she holds a 100% interest in Paris Jewels LLC

("**Paris Jewels**") and a 100% interest in Treasures of Prince LLC ("**Treasures of Prince**").

7056–1 Statement ¶ 10. In her SOFA, in response to the question "[w]ithin 4 years before you

filed for bankruptcy, did you own a business or have any of the following connections to any

business . . .", the Debtor identified three entities: Treasures of Prince, Paris Jewels and Treasure

International. *Id.* ¶ 11; SOFA no. 27. She represented that Treasure International was "50%

owned with [her] brother." SOFA no. 27.  In her SOFA, the Debtor also stated that she is married

(*see* SOFA no. 1); in her Amended Schedules, she described her spouse as her "estranged

spouse." 7056-1 Statement ¶ 13.  In her Schedule I, the Debtor represented that her sole source of

income is from "[c]ontributions from estranged spouse and brother" in the amount of $8,000 per

month. *Id.* ¶ 14. She listed "jewelry" valued at $2,500.00, "clothing" valued at $3,000.00, and

various personal electronics valued at $1,500.00 as her only personal and household items of any

value. *See* Amended Schedules, Part 3, nos. 7, 11-12. The Debtor answered "no" to question 18

of the SOFA, which asked "[w]ithin 2 years before you filed for bankruptcy, did you sell, trade,

or otherwise transfer any property to anyone, other than property transferred in the ordinary

course of your business or financial affairs?" 7056–1 Statement ¶ 26; SOFA no. 18. In her

Amended Schedules, she represented that she has no interest in (a) retirement or pension

accounts; and (b) education IRA or section 529 plans. 7056–1 Statement ¶¶ 43, 45; Amended

Schedules, Question 21, 24.

---

[5]    Unless noted otherwise, the "Amended Schedules" refers to the further amended Schedules A/B that the Debtor
filed with the Court on May 10, 2020 [ECF No. 32].

The Trustee examined the Debtor at her section 341 meeting of creditors on March 10, 2020 (the "**341 Meeting**"), and again on May 13, 2020, at the continued section 341 meeting (the "**Continued 341 Meeting**"). 7056-1 Statement ¶ 15. At the Continued 341 Meeting, the Debtor testified that her husband is Rajesh Chandiramani ("**Rajesh**") and that Rajesh provided her with financial support to pay for her living expenses. *Id.* ¶ 16. She also testified she was the 50% owner of Treasure International until 2018, at which time she transferred her interest to her brother (the "**Alleged Transfer**"), making him the 100% owner of Treasure International. *Id.* ¶ 27. Moreover, she testified that (i) she formed Paris Jewels in December 2019 and funded its HSBC bank account in February 2020 (*i.e.*, post-petition) with her personal funds; (ii) that Paris Jewels had not conducted any business to date; and (iii) that it did not own any jewelry. *Id.* ¶¶ 35, 37, 38.

The Turnover Motion

On June 9, 2020, the Trustee sent a letter to the New York State Department of Taxation and Finance ("**NYSDOF**") advising that the Debtor's tax refunds are property of the Estate which should be sent to the Trustee. *Id.* ¶ 18. In early December 2020, NYSDOF informed the Trustee that it had already sent the Debtor a tax return payable to her and Rajesh in the amount of $19,906 (the "**2018 NYS Refund**"). *Id.* ¶ 19. On December 18, 2020, the Trustee, through her counsel, e-mailed the Debtor requesting, pursuant to section 542 of the Bankruptcy Code, that she send the Trustee a check for 50% of the 2018 NYS Refund. *Id.* ¶ 20.[6] In the e-mail, counsel advised, among other things, that the Trustee would seek relief from the Bankruptcy

---

[6]   A copy of the Trustee's December 18, 2020 e-mail to the Debtor is attached to the Makower Affirmation as Exhibit 3.

Court if the Debtor failed to turn over that portion of the 2018 NYS Refund. *See* Makower Aff.,
Ex. 3.

The Debtor failed to comply with the Trustee's request. On February 12, 2021, the
Trustee filed a motion seeking an order directing the Debtor to turn over $9,548.00 to the
Trustee—50% of the 2018 NYS Refund—pursuant to Bankruptcy Code sections 521(a)(4) and
542(a) (the "**Turnover Motion**"). *See* 7056–1 Statement ¶¶ 20-21.[7] In the Turnover Motion, the
Trustee described her unsuccessful efforts to obtain document production from the Debtor. *Id.* ¶
22.[8] In the Turnover Motion, the Trustee again sought the same information and documents the
Trustee previously requested (set forth in Schedule A to the Turnover Motion), which she
contended were property of the Estate or relate to property of the Estate,[9] as well as copies of all
books and records relating to any and all businesses in which the Debtor held any interest or was
an equity holder or partner or officer or director during the 6-year period prior to the Petition
Date. *See* Turnover Motion, Schedule A; *see also* 7056–1 Statement ¶ 21. The Debtor did not
challenge the substance of the Turnover Motion.[10] After hearings on March 9 and 12, 2021, the
Court granted the Turnover Motion and ordered the Debtor to turn over $9,548.00 (50% of the

---

[7]    *See Chapter 7 Trustee's Motion Pursuant to 11 U.S.C. §§ 521(a)(4) and 542(a), Directing the Debtor to Turn Over Property of the Estate and Books and Records Relating to Property of the Estate* [ECF No. 99].

[8]    The Trustee requested documents by e-mail from the Debtor on May 13, 2020, May 29, 2020, June 4, 2020, and June 22, 2020. 7056-1 Statement ¶ 22.

[9]    Schedule A of the Turnover Motion lists 19 requests for documents concerning the Debtor's financial assets and property, including, *inter alia*, "all Documents and Things evidencing transfers of any funds of the Debtor, including domestically and internationally, whether by check, wire transfer, cash withdrawal and/or any other means." Turnover Motion, Schedule A, Request No. 1.

[10]   The Debtor filed a response to the Turnover Motion stating, among other things, that that the Trustee "act[ed] under false authority" and the Debtor was not a "debtor" on account of her "exhaustive notices to dismiss this action." *See Notice & Affidavit in Rejection of Capricious Order Made Ultra Vires and Under Color of Law & Authority by Judge James J. Garrity, Jr., dated March 23, 2021, as Violative of Her Substantive Due Process Rights and Equality Before the Law, the United States Constitution Article 6, Yick Wo. V. Hopkins, 118 U.S. 356 (1886)* [ECF No. 117], at ¶¶ 2-3. The Court previously denied the Debtor's motion to dismiss the bankruptcy case. *See* [ECF No. 79].

2018 NYS Refund), as well as all documents sought by the Trustee in the Turnover Motion (the

"**Turnover Order**"). *See* 7056–1 Statement ¶ 24.[11] To date, the Debtor has failed to comply with

the Turnover Order. She has neither sent the Trustee $9,548.00 nor produced any of the

documents the Court ordered her to produce. *Id*. ¶ 25.

<u>The Complaint</u>

The essence of the Complaint is that the Trustee is entitled to a judgment denying the

Debtor her discharge because the Debtor has failed to account for, and has concealed, Estate

assets, including books, records, and bank accounts, relating to Treasure International, Paris

Jewels, and the Debtor's other personal and business assets and property. *See* Complaint ¶¶ 13-

25. The Trustee asserts that the Debtor has not provided her with any proof that she made the

Alleged Transfer to her brother and contends that the Debtor testified falsely at the Continued

Section 341 Meeting that Paris Jewels owns no jewelry and has not engaged in any business. *Id.*

¶¶ 14-18, 21, 23. She also complains that despite her numerous written requests to the Debtor to

produce documents (including by emails on May 13, 2020, May 29, 2020, June 4, 2020, and

June 22, 2020), many documents and information relating to the Debtor's personal and business

assets remain outstanding. *Id.* ¶ 24. The Trustee asserts that this includes, but is not limited to: (i)

the Debtor's 2014 and 2015 tax returns; (ii) the Debtor's personal bank statements and fronts and

backs of cancelled checks for the past six years for all open and closed bank accounts; (iii)

Treasure International's bank statements for the past 6 years; (iv) the location of the storage unit

where Treasure International's documents are or were stored and contact information for the

storage facility; (v) all bank statements relating to the Paris Jewels bank account at HSBC, from

---

[11]    *See Order Directing the Debtor to Turn Over Property of the Estate and Books and Records Relating to Property of the Estate* [ECF. No. 112].

7

inception to present; (vi) a list of all jewelry inventory in the possession, custody or control of the Debtor or any entity affiliated with the Debtor as of the Petition Date; and (vii) contact information for an individual identified as "Mr. Pati." *Id.*[12]

The Complaint includes five counts for relief under section 727(a): Count One (§ 727(a)(2)) (Complaint ¶¶ 26-29); Count Two (§ 727 (a)(3)) (*id.* ¶¶ 30-33); Count Three (§ 727(a)(4)(A)) (*id.* ¶¶ 34-37); Count Four (§ 727(a)(4)(D)) (*id.* ¶¶ 38-40); and Count Five (§ 727(a)(5)) (*id.* ¶¶ 41-45). On December 18, 2020, the Trustee served the Complaint on the Debtor. On January 26, 2021, the Debtor filed her "Notice of Answer" and affidavit in support of her Answer and Counterclaims (the "**Answer**").[13] In her Answer, the Debtor asserts that the contents of the Complaint are "void nunc pro tunc" because the Trustee is not a "lawful trustee" and because "she has bona fide documentary evidence to support or verify ALL causes of action and REMEDIES sought by [the Trustee] . . . ." Answer ¶¶ 3, 4. On or about February 11, 2021,

---

[12]    The Trustee also maintains that in an action against the Debtor entitled *Treasures London Limited, et al. v. Poonam Keswani and Treasures of Prince, LLC*, Index No. 652666/2019 pending in the New York State Supreme Court, New York County, the Debtor produced altered, falsified, and fabricated bank statements, fabricated and materially false or misleading financial statements, and false, fictitious and fabricated invoices. Complaint ¶ 25.

[13]    *See Notice of Answer In The Nature of Counter Claims Against Deborah J. Piazza, Esq. As "Trustee", Jill L. Makower, Esq., Tarter Krinsky & Drogin LLP, And Their Agents, For Their Capricious Contumacy, Racial Bias, Intentional Destruction of Respondent's Substantive Constitutional Rights, Usage of Threats, Coercion, And Imposition of False Will, Improvident & Inimical Collective Bad Faith Acts To Deceive This Court With Their Continuing Frivolous Filings, Unlawful Confiscation of Respondent's $11,000, Which Is Demanded Nunc Pro Tunc; see also* Debtor's affidavit in support, dated January 15, 2021 (containing the Debtor's answer to the Complaint and counterclaims against the Trustee) [AP ECF No. 8].

the Trustee moved to dismiss the Counterclaims, with prejudice.[14] The Debtor opposed the

motion.[15] On March 16, 2021, the Court dismissed the Counterclaims.[16]

The Motion

The Trustee seeks an order granting summary judgment on Counts One, Two, Three and

Four of the Complaint. In addition, she asks the Court to grant a judgment denying the Debtor

her discharge under section 727(a)(6)(A) of the Bankruptcy Code because the Debtor failed to

"obey [a] lawful order of the court" by declining to turn over 50% of the 2018 NYS Refund and

the documents requested in the Turnover Motion. *See* Memorandum at 9-10; *see also* 7056–1

Statement ¶¶ 24-25. The Complaint does not include a request for relief under section

727(a)(6)(A).

In support of the Motion, the Trustee contends that to date, her investigation of the

Debtor has uncovered specific evidence of the Debtor's failure to provide accurate information

in the SOFA and Amended Schedules and failure to provide information in response to the

Trustee's requests. For example, the Trustee contends that contrary to the Debtor's

representations in the Amended Schedules and the SOFA, the Debtor holds an intertest in

businesses other than Paris Jewels, Treasures of Prince, and Treasure International. In the

"Company Profile" of "Treasures Group Co.",[17] the Debtor identifies herself as the president of

---

[14]    *See Notice of Hearing on Trustee's and Trustee's Counsel's Motion to Dismiss Debtor's Purported Counterclaims, Pursuant to Fed. R. Bankr. R. 7012 and Fed. R. Civ. P. 12(b)(6)* [AP ECF No. 9].

[15]    *See Affidavit In Rejection Of The Capricious Babble Seeking To Dismiss Affiant's Lawful Counterclaims Against A Prurient Abuser Of Public Trust & Office And Continuing Demand To Return The Sum Of $11,000 Taken From Her By Coercion, Threat, and Brigandry* [ECF No. 108].

[16]    *See Memorandum Decision and Order Granting Trustee's Motion To Dismiss Debtor's Counterclaims With Prejudice Pursuant To Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(6)* [ECF No. 14].

[17]    A copy of the "Company Profile" of "Treasures Group Co." is attached as Exhibit 9 to the Makower Affirmation.

"Treasures Group Co.", consisting of various entities not mentioned anywhere in the Amended Schedules or SOFA, including Parklane Jewelers in Paradise Island, Bahamas, Parklane Jewelers in Nassau, Bahamas and Diamond Center in Nassau, Bahamas (collectively, the "**Undisclosed Entities**"). 7056–1 Statement ¶ 39.

Further, the Trustee has produced evidence purporting to demonstrate that the Debtor has received prepetition and post-petition transfers from Treasure International and at least one of the Undisclosed Entities, none of which she disclosed to the Trustee in the Amended Schedules, the SOFA, the 341 Meeting, the Continued 341 Meeting, or otherwise in response to the Trustee's numerous document requests. *See id.* ¶ 40; Amended Schedules; SOFA. These transfers are as follows: (a) On February 19, 2020, Treasures Bahamas Ltd. wired $11,000 into the Wells Fargo joint checking account of the Debtor and her husband Rajesh; and (b) On March 12, 2020, Park Lane Jewelers Ltd. ("**Park Lane**") wired $9,980.00 into that same account.[18] 7056-1 Statement ¶¶ 41-42.

Finally, the Trustee has submitted evidence demonstrating that the Debtor has failed to disclose her interest in retirement, pension, and educational accounts—all of which the Trustee contends should have been disclosed in the Amended Schedules and SOFA. As of March 31, 2020, the Debtor owned a Roth IRA ("**Roth IRA Account**") and had an interest in an educational IRA ("**529-A Account**"), with balances of $56,055.94 and $104,001.10, respectively. *See* Makower Aff., Ex. 11;[19] *see also* 7056–1 Statement ¶¶ 44, 46.

---

[18]   A copy of the Well Fargo checking account statement evidencing these transfers is attached as Exhibit 10 to the Makower Affirmation.

[19]   A copy of the March 31, 2020 quarterly statement evidencing these accounts and their balances is attached as Exhibit 11 to the Makower Affirmation.

The Debtor did not respond to the Motion and did not attend the Court's telephonic hearing on the Motion.

## Applicable Legal Standards

Federal Rule of Civil Procedure 56 ("**Rule 56**") is made applicable to this case by Bankruptcy Rule 7056. Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [movant] is entitled to a judgment as a matter of law."); *NML Capital v. Republic of Argentina*, 621 F.3d 230, 236 (2d Cir. 2010) ("Summary judgment is proper only if the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.") (citations omitted).  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). "[T]he trial court's task at [] summary judgment . . . is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.").  The substantive law governing the case

will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Under Rule 56, the movant bears the initial burden of proof that the undisputed facts entitle it to summary judgment as a matter of law. *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995); *see also Hellstrom v. U.S. Dep't of Veterans Affairs*, 46 F. App'x 651, 654 (2d Cir. 2002) ("The moving party bears the initial burden of informing the ... court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.") (internal quotation marks omitted). In determining whether summary judgment is appropriate, the court must view the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all inferences against the moving party. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008) (*citing Anderson*, 477 U.S. at 255). If the movant meets its initial burden, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*" (*see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); it cannot "rely on conclusory allegations or unsubstantiated speculation" in its opposition to summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Further, "mere denials or unsupported alternative explanations of its conduct" will not suffice. *Senno v. Elmsford Union Free School Dist.*, 812 F.Supp.2d 454, 467 (S.D.N.Y. 2011) (citing *SEC v. Grotto*, No. 05 civ. 5880, 2006 WL 3025878, at *7 (S.D.N.Y. Oct. 24, 2006)). "An issue of fact is 'genuine' if the evidence is such that a [trier of fact] could return a verdict for the non-moving party." *Id.* (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).

## Discussion

"Chapter 7 of the Bankruptcy Code is designed to provide individual debtors the opportunity for a 'fresh start' through the discharge of personal liability for pre-petition debts." *Beer Sheva Realty Corp. v. Pongvitayapanu (In re Pongvitayapanu),* 487 B.R. 130, 138 (Bankr.E.D.N.Y.2013). The denial of a debtor's discharge is a drastic remedy. Accordingly, in applying section 727, the Court must strictly construe the statute against the party objecting to discharge and liberally in favor of the debtor. *State Bank of India v. Chalasani (In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir. 1996); *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006). Still, a discharge under section 727 is a privilege, not a right, and may only be granted to the honest debtor. *See Cunningham v. Funding,* No. 19 Civ. 5480 (AJN) (SN), 2019 WL 10744868, at * 3 (S.D.N.Y. Dec. 10, 2019), *report and recommendation adopted*, No. 19 Civ. 5480 (AJN) (SN), 2020 WL 5775207 (S.D.N.Y. Sept. 27, 2020) (citing *Congress Talcott Corp. v. Sicari (In re Sicari)*, 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994)). As plaintiff, "the Trustee bears the burden of proving by the preponderance of the evidence that a discharge should be denied based on one or more of the exceptions set forth in the statute." *Mazer-Marino v. Levi (In re Levi)*, 581 B.R. 733, 743 (Bankr. S.D.N.Y. 2017) (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). *See also In re Steinberg*, No. 14-10845-MG, 2016 WL 2637959, at *15 (Bankr. S.D.N.Y. May 5, 2016) ("Discharge will be precluded under section 727(a)(2) if all of the above prongs [of that subsection] are proven by a preponderance of the evidence.") (citing *Grogan*, 498 U.S. at 290-91).

Pursuant to Local Bankruptcy Rule 7056-1, statements of material fact submitted in support of a summary judgment motion are deemed admitted unless "specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Bankruptcy Rule 7056-1(d). As noted, the Debtor did not respond to the Trustee's

7056-1 Statement. Accordingly, the facts stated by the Trustee are deemed admitted. The Trustee

has demonstrated that there is no genuine dispute as to any material fact. Accordingly, below, the

Court considers whether the Trustee is entitled to judgment as a matter of law on any of her

claims.

Whether the Trustee is Entitled to
Summary Judgment on Count One

 In Count One of the Complaint, the Trustee alleges that the Debtor should be denied a

discharge pursuant to section 727(a)(2)(B) of the Bankruptcy Code. Complaint ¶¶ 26-29. In

support of this claim, the Trustee contends, *inter alia*, that the Debtor has concealed Estate

property because she 1) failed to turn over the Debtor's share of the 2018 NYS Refund; and 2)

failed to identify her Roth IRA Account and a 529-A Account in her SOFA and Amended

Schedules. *See* Memorandum at 4; *see also* 7056–1 Statement ¶¶ 43-46. The Trustee also

contends that the Debtor's failure to produce her books and records, including documents

required to be produced by the Turnover Order, evidence her concealment of Estate property.

Memorandum at 4.

 Pursuant to section 727(a)(2)(B), the Court shall deny the debtor a discharge, if

> the debtor, with intent to hinder, delay, or defraud a creditor or an
> officer of the estate charged with custody of property under this title,
> has transferred, removed, destroyed, mutilated, or concealed, or has
> permitted to be transferred, removed, destroyed, mutilated, or
> concealed—
>  *      *      *      *
>  **(B)** property of the estate, after the date of the filing of the
> petition[.]

11 U.S.C. § 727(a)(2)(B). To prevail under this section, "the party objecting to discharge must

demonstrate by a preponderance of the evidence that (1) the debtor (2) transferred or concealed

(3) property of the bankruptcy estate (4) with the intent to hinder, delay, or defraud the creditor

14

(5) after the filing of the bankruptcy petition." *In re Pisculli*, 408 F. App'x 477, 479 (2d Cir.

2011) (citation omitted). *See also In re Bressler*, 387 B.R. 446, 458 (Bankr. S.D.N.Y. 2008)

("The exception to discharge in § 727(a)(2)[(B)] [] essentially consists of two components: an act

(i.e., a transfer or concealment of property) and an improper intent (i.e., a subjective intent to

hinder, delay, or defraud . . . .") (internal quotation omitted). As relevant, to prevail under this

section, the Trustee must show both that the Debtor concealed Estate property and that she did so

with an intent to hinder, delay or defraud creditors or the trustee. The party objecting to the

debtor's discharge is not required to prove that creditors were actually harmed by the

concealment of assets. *In re Carl*, 517 B.R. 53, 68 (Bankr. N.D.N.Y. 2014). Rather, in assessing

whether "concealment" has occurred for purposes of Section 727(a)(2), "courts ask: [d]id the

[debtor] place assets beyond the reach of creditors or withhold knowledge of assets by failing or

refusing to divulge information to which creditors were entitled?" *In re Gasson*, 629 B.R. 539,

548 (S.D.N.Y. 2021) (internal quotation omitted). However, "[b]y the unambiguous text of the

statute, concealment alone is sufficient under [section 727(a)(2)]." *In re Gardner*, 384 B.R. 654,

665 (Bankr. S.D.N.Y. 2008). *See also In re Shah*, No. 07-13833 (SMB), 2010 WL 2010824, at

*7 (Bankr. S.D.N.Y. May 13, 2010) ("Concealment refers to placing assets beyond the reach of

creditors or withholding pertinent information, and need not involve an actual transfer.")

(citation omitted); *In re Levi*, 581 B.R. at 744 ("'Concealment' [] happens when a debtor plac[es]

assets beyond the reach of creditors or withhold[s] pertinent information when he has a legal

duty to disclose it") (internal citation omitted).

      For purposes of section 727(a)(2)(B), the term "property of the estate" includes "all legal

and equitable interests of the debtor in property as of the commencement of the case[.]" 11

U.S.C. § 541(a)(1). The Court construes this section broadly to "'include all property interests,

whether reachable by state-court creditors or not, whether vested or contingent, [and] this definition draws into the estate all of the debtor's property interests as of the filing date.'" *In re Carl,* 517 B.R. at 68 (quoting *United States v. Rauer*, 963 F.2d 1332, 1337 (10th Cir. 1992)).

Finally, under section 727(a)(2), whether a debtor had fraudulent intent is a question of fact. "The plaintiff must establish an actual intent to hinder, defraud or delay; constructive fraudulent intent cannot be the basis for denial of discharge . . . ." *In re Klutchko*, 338 B.R. 554, 570 (Bankr. S.D.N.Y. 2005) (*quoting Glaser v. Glaser (In re Glaser),* 49 B.R. 1015, 1019 (S.D.N.Y. 1985)). The statute is drafted in the disjunctive. "[T]he term 'defraud' does not subsume 'hinder or delay.'" *In re Levi*, 581 B.R. at 745 (quoting *Matter of Bowyer*, 916 F.2d 1056, 1059-60 (5th Cir. 1990), *rev'd on other grounds on reh'g*, 932 F.2d 1100 (5th Cir. 1991)). "Intent to 'hinder' is shown where a debtor acts 'with an intent to impede or obstruct creditors,' while the intent to 'delay' is shown when the debtor acts 'with an intent to slow or postpone creditors.'" *In re Gasson*, 629 B.R. at 650 (quoting *In re Levi*, 581 B.R. at 745). Courts have found that a debtor's inaccurate statements on schedules concerning his or her property can amount to intent to defraud. *See*, *e.g*., *In re Levi*, 581 B.R. at 751 (Debtor's failure to disclose ownership interests in various businesses in his bankruptcy schedules evidenced willful intent to conceal assets from trustee and "avoid having to apply those assets to the payment of his creditor's claims"). Further, "vague and evasive" behavior in response to a Trustee's inquiries provides support that a debtor intends to conceal assets and "hinder or delay creditors." *Id*.

! Because courts find concealment under section 727(a)(2)(B) when a debtor fails to disclose assets and information that speaks to potential assets, *see In re Shah*, 2010 WL 2010824, at *7, the Court finds that the Debtor concealed Estate property post-petition by (a) failing to disclose: (i) her Roth IRA Account (7056-1 Statement ¶¶ 43-44); (ii) her 529-A Account (*id*. ¶¶

45-46); and (iii) her interest in Park Lane (*id.* ¶¶ 10-12, 39, 42); and (b) failing to produce the

documents she was ordered to under the Turnover Order (*id.* ¶¶ 22-25, 28). *See In re Beaudry*,

549 B.R. 576, 583 (Bankr. N.D.N.Y. 2016) (trustee established a section 727(a)(2)(B) claim

where debtor did not disclose an account receivable in his schedules); *In re Milano*, 35 B.R. 89,

91 (Bankr. S.D.N.Y. 1983) ("The debtor's concealment of his inheritance from his father's estate,

together with his refusal to divulge or produce any documentation pertaining to the financial

dimensions of this inheritance, is sufficient reason to deny granting a discharge to him pursuant

to 11 U.S.C. § 727(a)(2)(B). It amounts to a concealment of property of the estate . . . .").

The Debtor failed to list her Roth IRA Account or 529-A Account in the Amended

Schedules, which she amended multiple times, in response to specific questions about each type

of account.[20] Similarly, the unrebutted facts show that Park Lane wired nearly $10,000 into the

Debtor's checking account only a few weeks after the Petition Date. 7056-1 Statement ¶ 42. Yet

the Debtor failed to disclose Park Lane on her Amended Schedules as an entity in which she held

an interest. *Id.* ¶¶ 10-12, 40.  The Turnover Order required the Debtor to produce 19 categories

of documents relating to her assets, as well as separately required her to produce "copies of all

books and records relating to any and all businesses in which the Debtor held any interest . . . ."

Turnover Order at 1-2; Turnover Motion, Schedule A. The Trustee had previously asked for

documents concerning the Debtor's personal and business assets at least four times in writing.

*See* 7056-1 Statement ¶ 22. The Debtor did not produce any of the documents required by the

---

[20]    Question 21 of Schedule A/B specifically asks: "[d]o you own or have any legal or equitable interest in . . . retirement or pension accounts." This question lists "[i]nterests in IRA" as an example of a retirement or pension account. The debtor checked "no" on her Amended Schedules, as well as on prior iterations of the schedules she filed with the Court. Amended Schedules, Question 21; *see also* [ECF Nos. 7, 8, 21]. Question 24 of Schedule A/B specifically asks: "[d]o you own or have any legal or equitable interest in . . . an education IRA [account]." This question lists accounts under "26 U.S.C. §§ 530(b)(1), 592A(b), and 529(b)(1)" as examples. The debtor checked "no" on her Amended Schedules, as well as on prior iterations of the schedules she filed with the Court. Amended Schedules, Question 24; *see also* [ECF Nos. 7, 8, 21].

Turnover Order. *Id*. ¶ 25. The Court finds that the Debtor concealed her assets (*e.g.*, the Roth IRA Account, 529-A Account, and interest in Park Lane) and information (*e.g.*, books and records concerning her potential assets) with, at a minimum, the intent to hinder or delay her creditors because of her pattern of "vague and evasive" behavior in the bankruptcy case, including, *inter alia*, her repeated failure to produce documents concerning her business interests, *id*. ¶ 22, and repeated failure to provide truthful disclosures in the Amended Schedules, *id*. ¶¶ 43-46. *See In re Levi*, 581 B.R. at 751 (Debtor's failure to disclose ownership interests in various businesses in his bankruptcy schedules evidenced willful intent to conceal assets from trustee). Accordingly, the Court finds that the Trustee has demonstrated that the Debtor's discharge must be denied under section 727(a)(2)(B) of the Bankruptcy Code.

Whether the Trustee is Entitled to
Summary Judgment on Count Two

In Count Two of the Complaint, the Trustee alleges that the Debtor should be denied a discharge pursuant to section 727(a)(3) of the Bankruptcy Code. Complaint ¶¶ 30-33. In support of this claim, the Trustee contends that the Debtor has failed to produce any documents in response to the Turnover Order, which, as relevant, required her to produce 19 categories of documents concerning her personal and business assets. 7056-1 Statement ¶ 22; Turnover Motion, Schedule A; *see also* Complaint ¶¶ 15, 24. The Trustee contends that the Debtor's production failures prevent her from ascertaining Keswani's complete financial condition. Memorandum at 5.

Pursuant to section 727(a)(3), the Court shall deny the debtor a discharge, if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such

> act or failure was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3). "Under section 727(a)(3) of the Bankruptcy Code, a debtor may not conceal documentary evidence which would explain its financial condition." *In re Chachra*, 138 B.R. 397, 401 (Bankr. S.D.N.Y. 1992). This section "make[s] the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *In re Cacioli*, 463 F.3d at 234 (citing *In re Underhill,* 82 F.2d 258, 260 (2d Cir. 1936)). In doing so, it "ensures that 'creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history.'" *Id.* (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992)).  *See also In re Sethi*, 250 B.R. 831, 837 (Bankr. E.D.N.Y. 2000) ("The fundamental policy underlying § 727(a)(3) is to insure that the trustee and the creditors receive sufficient information to enable them to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions.") (collecting cases). Courts employ a two-step approach in analyzing whether a debtor should be denied a discharge under section 727(a)(3). *In re Cacioli*, 463 F.3d at 235. First, "[t]he initial burden lies with the creditor to show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." *Id.* Second, "[i]f the creditor shows the absence of records, the burden falls upon the bankrupt to satisfy the court that his failure to produce them was justified." *Id.* While courts often focus on a debtor's failure to keep or preserve records when analyzing section 727(a)(3) claims, courts find that a debtor's failure to produce books and records—whether he or she maintains them or not—is sufficient to deny a debtor a discharge. *See*, *e.g.*, *In re Beaudry*, 549 B.R. at 584-585 ("Based upon the undisputed facts, the court finds that Plaintiff has satisfied his burden under § 727(a)(3) for denial of Debtor's discharge" because "no records were produced relative to the Business Ventures. From

19

the tendered records, it is impossible to ascertain 'with substantial completeness and accuracy' the Debtor's 'present financial condition and his recent business transactions' within a reasonable lookback period of time prior to filing") (citing *In re Sethi*, 250 B.R. at 838); *In re Gardner*, 384 B.R. at 665 ("A denial of discharge under this subsection requires proof" that the debtor "fail[ed] . . . to keep or preserve any recorded information including books, documents, records and papers *or* [] an act of destruction, mutilation, falsification, or concealment of" such information); *In re Rodriguez*, No. 05-19599 (ALG), 2008 WL 3200215, at *5 (Bankr. S.D.N.Y. Aug. 5, 2008) (debtor's failure to produce any records concerning his income or salary in the face of undisputed evidence of his employment made it "impossible to determine his true financial position on the eve of the bankruptcy filing" and demonstrates that plaintiff "met his initial burden to show that the Debtor failed to keep or preserve adequate records"). It is not necessary to show that the debtor had an intent to conceal his financial information to support a denial of discharge under section 727(a)(3). *In re Sethi*, 250 B.R. at 837. *See also In re Adler*, 494 B.R. 43, 67 (Bankr. E.D.N.Y. 2013) ("Lacking an intent requirement, § 727(a)(3) establishes a two-step, burden-shifting approach that makes adequate record-keeping a predicate for a debtor's discharge.") (citations omitted).

The Trustee has demonstrated that the Debtor concealed information by failing to produce the numerous documents called for under the Turnover Order, which prevents the Trustee from ascertaining the Debtor's complete financial position. 7056-1 Statement ¶¶ 22-25. These documents relate to the Debtor's personal and business assets, including: (i) the Debtor's 2014 and 2015 tax returns (*id*. ¶ 22); (ii) the Debtor's personal bank statements and fronts and backs of cancelled checks (*id*.); (iii) Treasure International's bank statements (*id*.); (iv) the location of the storage unit where Treasure International's bank statements are or were stored, as

well as contact information for the storage facility (*id*.); and (v) Paris Jewels' bank statements (*id*.). The undisputed facts demonstrate that the Debtor did not produce these documents after at least four requests in writing from the Trustee, and after the Turnover Order issued by the Court. *Id*. ¶¶ 22, 24-25. More broadly, under the Turnover Order, the Debtor was required to produce copies of all books and records relating to any and all businesses in which the debtor held an interest. Turnover Order at 1. Given the Debtor's misrepresentations, these documents may disclose additional assets and property of the Debtor. The Trustee is entitled to learn about these assets and property in order to gain a fulsome understanding of the Debtor's financial position and affairs. For example, the undisputed facts demonstrate that Park Lane, an Undisclosed Entity affiliated with the Debtor, wired nearly $10,000 into the Debtor's checking account only a few weeks after the Petition Date. 7056-1 Statement ¶¶ 39-40, 42. Yet the Debtor failed to disclose Park Lane on her Amended Schedules, SOFA or elsewhere as an entity in which she held an interest. *Id*. ¶¶ 10-12, 40. And, the Debtor previously testified that she opened a bank account for Paris Jewels with her own funds in December 2019, yet she has failed to produce a single bank statement for such account. *Id*. ¶¶ 35-36. These failures to produce documents evidence concealment of information from the Trustee in a manner that makes it "impossible to ascertain with substantial completeness and accuracy the Debtor's present financial condition" and, thus, demonstrates that the Debtor's discharge must be denied under section 727(a)(3) of the Bankruptcy Code. *See In re Beaudry*, 549 B.R. at 584-585.

Whether the Trustee is Entitled to
<u>Summary Judgment on Count Three</u>

In Count Three of the Complaint, the Trustee alleges that the Debtor should be denied a discharge pursuant to Bankruptcy Code section 727(a)(4)(A) because she made false oaths in connection with her bankruptcy case. Complaint ¶¶ 34-37. In support of this claim, the Trustee

contends that in failing to disclose her Roth IRA and 529-A Accounts and that she was president of Treasures Group Co. and that she held an interest in any of the Undisclosed Entities in her SOFA and Amended Schedules, her sworn statements in support of those statements were false. Memorandum at 7.

Pursuant to section 727(a)(4)(A) of the Bankruptcy Code, the Court shall deny the Debtor a discharge, if "the debtor knowingly and fraudulently, in or in connection with the case . . . (A) made a false oath or account[.]" 11 U.S.C. § 727(a)(4)(A). To obtain relief under this section, the Trustee must prove: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *In re Murray*, 249 B.R. 223, 228 (E.D.N.Y. 2000); *see also In re Gardner*, 384 B.R. at 667.

Once the objecting party has produced evidence of a false statement, the burden shifts to the debtor to provide evidence that the misrepresentation was not intentional or provide another credible explanation. *In re Klutchko*, 338 B.R. at 567. The false oaths recognized under section 727(a)(4)(A) include omissions and encompass statements "made in schedules, statement of affairs, or statements during examinations." *In re Gardner*, 384 B.R. at 667. In *In re Levi*, for example, the Court found that the debtor made numerous false oaths because he failed to identify in his schedules or statement of financial affairs numerous businesses in which he served as director and manager. 581 B.R. at 753.  A false oath or omission is material if it relates "to the debtor's business transactions, concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property." *In re Gardner*, 384 B.R. at 667. Put another way, "[m]ateriality merely requires a showing that the relevant information was something that creditors and the trustee reasonably would have regarded as significant in identifying the assets

of the estate that could be liquidated and used to satisfy claims." *In re Levi*, 581 B.R. at 754.

Courts will infer intent to defraud if a debtor acted with reckless disregard for the truth. *See id*.

Intent to defraud can also be "inferred from a series of incorrect statements contained in the

schedules." *In re Beaudry*, 549 B.R. at 586 (internal quotation omitted). Courts often find

"considerable overlap between the application of sections 727(a)(4)(A) and 727(a)(2)." *See*, *e.g*.,

*In re Klutchko*, 338 B.R. at 570 ("The Court has already found that [the debtor] concealed the

nature and circumstances of [an asset] with fraudulent intent. That false disclosure, or

concealment, was made to the Trustee postpetition, satisfying the temporal requirement of

section 727(a)(2)(B), assuming that [the asset] . . . was property of the estate.").

   The Trustee has demonstrated that the Debtor has knowingly made material false oaths in

connection with her bankruptcy case. First, as analyzed above in assessing the merits of the

Trustee's claim for relief under section 727(a)(2)(B) of the Bankruptcy Code, the undisputed

evidence demonstrates that the Debtor failed to disclose her Roth IRA or 529-A Accounts in the

SOFA or Amended Schedules, which she amended multiple times, in response to specific

questions about each type of account. *See*, *e.g*., Amended Schedules, Question 21, 24; 7056-1

Statement ¶¶ 43-46. The Court finds that the undisclosed information is material to the Trustee's

analysis of the extent of the Debtor's property and assets. The Debtor's Roth IRA Account alone

contained a post-petition balance of over $56,000—more than half of $95,550.89, which is the

total value of all property the Debtor disclosed on her Amended Schedules. *See* Amended

Schedules, Question 63; Makower Aff., Ex. 11. Second, the Debtor made a false oath when she

failed to disclose any interest in any of the Undisclosed Entities on her Amended Schedules, at

least one of which wired her nearly $10,000 after the Petition Date.[21] 7056-1 Statement ¶¶ 41-42.

---

[21]   The Debtor's false statements in the Schedules, Amended Schedules, and SOFA constitute false oaths under
section 727(a)(4) of the Bankruptcy Code because she signed these documents under penalty of perjury. *See*

The Court likewise finds this omission material because it relates to significant assets of the estate and disclosing them would have "materially assisted the Trustee in identifying all property of the Debtor's estate." *See In re Levi*, 581 B.R. at 754; *see also In re Gardner*, 384 B.R. at 667. Given the undisputed facts concerning these false statements, including the Debtor's repeated failure to disclose this and other information concerning her assets and property in SOFA, the Amended Schedules, at the 341 Meeting and the Continued 341 Meeting, the Court infers that the Debtor acted with fraudulent intent. *See In re Beaudry*, 549 B.R. at 585 (finding fraudulent intent based on debtor's "series of omissions" in bankruptcy schedules and statement of financial affairs). Accordingly, the Court finds that the Trustee has demonstrated that the Debtor's discharge must be denied under section 727(a)(4)(A) of the Bankruptcy Code. *See id*. at 584-586 (granting summary judgment on claim seeking denial of debtor's discharge under section 727(a)(4)).

Whether the Trustee is Entitled to
<u>Summary Judgment on Count Four</u>

In Count Four of the Complaint, the Trustee alleges that the Debtor should be denied a discharge pursuant to section 727(a)(4)(D) of the Bankruptcy Code. In support of this claim, the Trustee contends that the Debtor failed to produce the documents required under the Turnover Order. Memorandum at 9.

Pursuant to section 727(a)(4)(D), the Court shall deny the debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]" 11 U.S.C.

---

Amended Schedules at 9; SOFA at Part 12. *See also In re Shah*, 2010 WL 2010824, at *3 ("The bankruptcy petition and schedules of a debtor are considered statements under oath").

§ 727(a)(4)(D). Courts deny discharges under section 727(a)(4)(D) when the objecting party demonstrates: "(i) the debtor knowingly and fraudulently[,] (ii) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers relating to the debtor's property or financial affairs[,] (iii) in or in connection with the debtor's own case." *In re Gardner*, 384 B.R. at 668.

Courts have interpreted section 727(a)(4)(D) to require a debtor to provide a trustee "all requested documents . . . for his review, and failure to do so constitutes grounds for denial of discharge." *Id.*; *See also In re Erdheim*, 197 B.R. 23, 28 (Bankr. E.D.N.Y.1996) (granting summary judgment when debtor failed to produce documents requested by the trustee, forcing the trustee to seek production from third parties). "Unlike § 727(a)(3), this subsection requires a finding of intent." *In re Gardner*, 384 B.R. at 668. Circumstantial evidence of intent to act "knowingly and fraudulently" exists when the debtor's conduct is "evasive or persistently uncooperative," *In re Young*, 346 B.R. 597, 615 (Bankr.E.D.N.Y.2006), or when the debtor failed to provide evidence that he turned over documents, or withheld records after numerous requests, or failed to explain the failure to comply with an order to produce documents. *Id.* at 615–616 (collecting cases); *In re Robinson*, 595 B.R. 148, 161 (Bankr. S.D.N.Y. 2019).

The Trustee's facts demonstrate her repeated efforts to obtain records relating to the Debtor's assets and Estate property that the Trustee requires to administer this case, and the Debtor's refusal to provide the requested information. Those facts demonstrate, *inter alia*, that the Debtor has: (1) failed to produce documents and information concerning her personal and business assets after at least four written requests from the Trustee (7056-1 Statement ¶ 22); (2) failed to produce any documents required by the Turnover Order (*id*. ¶ 25); (3) repeatedly failed to produce documents concerning Treasure International, including documents concerning the

Alleged Transfer and the location of the storage facility where the company's books and records and bank statements are allegedly stored (*id*. ¶ 28); and (4) failed to produce Paris Jewels' bank statements despite the Trustee's various written requests (*id*. ¶ 36). The Debtor failed to produce documents after numerous written requests from the Trustee and has failed to set forth any facts explaining her failure to comply. The Trustee is entitled to judgment under section 727(a)(4)(D). *See In re Erdheim*, 197 B.R. at 28-29 (summary judgment warranted on section 727(a)(4)(D) claim where debtor failed to provide support for repeated failure to produce all documents requested by the trustee); *In re Singh*, 568 B.R. 187, 198 (Bankr. E.D.N.Y. 2017) (denying discharge under 11 U.S.C. § 727(a)(4)(D) because of debtor's "persistent and uncooperative conduct in responding to the Trustee's requests and his failure to disclose" his business interests); *In re Robinson*, 595 B.R. at 161 ("repeated false statements and evasive conduct" evidence "intent to act knowingly and fraudulently"). Accordingly, the Court finds that the Trustee has demonstrated that the Debtor's discharge must be denied under section 727(a)(4)(D) of the Bankruptcy Code. *See In re Erdheim*, 197 B.R. at 29; *In re Gardner*, 384 B.R. at 668 (denying discharge under section 727(a)(4)(D) because debtor's failure to disclosure records of his timeshare interests evidenced "attempt to continue the concealment of [his] assets from his creditors").

Whether the Trustee is Entitled to
Summary Judgment Under 727(a)(6)(A)

!

Pursuant to Section 727(a)(6)(A) of the Bankruptcy Code, the Court "shall grant the debtor a discharge, unless . . . the debtor has refused, in the case – (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]" 11 U.S.C. § 727(a)(6)(A). The Trustee contends that she is entitled to summary judgment denying the Debtor her discharge under section 727(a)(6)(A) because "[t]he Debtor refused to abide by the

Turnover Order and violated the Turnover Order in every respect." **Memorandum** at 10. *See also*

7056-1 Statement ¶¶ 22-25. The Trustee did not plead a claim for relief against the Debtor under

section 727(a)(6)(A) in the Complaint and has not sought leave of the Court to amend the

Complaint to allege such a claim. Still, she seeks leave of the Court to assert the claim in support

of the Motion.  Rule 15(b)(2) provides that:

> [w]hen an issue not raised by the pleadings is tried by the parties' express or
> implied consent, it must be treated in all respects as if raised in the pleadings. A
> party may move - at any time, even after judgment - to amend the pleadings to
> conform them to the evidence and to raise an unpleaded issue[.]

Fed. R. Civ. P. 15(b)(2). Rule 15(b) speaks to "Amendments During and After Trial." *Id.*

Nonetheless, courts in this circuit have applied Rule 15(b) to conform pleadings to the proof

offered at summary judgment. *See Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of*

*New Jersey,* 894 F.Supp.2d 288, 336 n.44 (S.D.N.Y. 2012) (collecting cases); *see also Cruz v.*

*Coach Stores. Inc.,* 202 F.3d 560, 569–70 (2d Cir. 2000), *superseded by statute on other*

*grounds*, N.Y.C. Local L. No. 85 (under Rule 15(b), plaintiff's "failure explicitly to plead a

hostile work environment claim . . . did not preclude the district court's consideration of that

issue on summary judgment"); *Clomon v. Jackson*, 988 F.2d 1314, 1323 (2d Cir. 1993) ("the

undisputed facts as presented on the summary judgment motion served as a basis to deem the

complaint amended to conform with the proof pursuant to Fed. R. Civ. P. 15(b).").

"The function of the pleadings is to give opposing parties notice of the facts on which the

pleader will rely, and, in the absence of prejudice to the opposing party, the court may allow the

pleadings to be amended to conform them to the evidence at any time, even after judgment." *Van*

*Alstyne v. Ackerley Grp., Inc*., 8 Fed. App'x 147, 154-55 (2d Cir. 2001) (citing Fed. R. Civ. P.

15(b)). "Thus, an issue raised for the first time in a motion for summary judgment may start the

amendment process." *In re Kern*, 567 B.R. 17, 28 (Bankr. E.D.N.Y. 2017) (citing *In re Bennett*

*Funding Group, Inc.,* 220 B.R. 743, 752-53 (Bankr. N.D.N.Y. 1997); *Seaboard Terminals Corp. v. Standard Oil Co.,* 104 F.2d 659 (2d Cir. 1939)).  The decision on whether to allow parties to "amend their pleadings to conform to the proof" under Rule 15(b) lies within the trial court's sound discretion. *Vermont Plastics, Inc. v. Brine, Inc.,* 79 F.3d 272, 279 (2d Cir. 1996). In exercising that discretion, the court must consider: (i) whether the parties have expressly or impliedly consented to litigation of the issue; and (ii) whether "against whom the amendment is offered will [] be prejudiced by the amendment." *See Hamilton v. City of New York*, 15-CV-4574 (CBA) (SJB), 2019 WL 1452013, at * 30 (E.D.N.Y. Mar. 19, 2019). In applying Rule 15(b), the "pivotal question is whether prejudice would result." *New York State Elec. & Gas Corp. v. Sec'y of Labor*, 88 F.3d 98, 104 (2d Cir. 1996).

The Debtor did not respond to the Motion. As such, she has not expressly consented to litigating the issues under section 727(a)(6)(A). However, in failing to contest the Motion, she has impliedly consented to the litigation of that issue. *See Luria Bros. & Co., Inc. v. Alliance Assurance Co*., *Ltd*., 780 F.2d 1082, 1089 (2d Cir. 1986) ("Usually, consent may be implied from failure to object at trial to the introduction of evidence relevant to the unpled issue.") (citation omitted). In considering whether the Debtor will be prejudiced by permitting the Trustee to assert the section 727(a)(6)(A) claim in support of the Motion, the Court considers whether the Complaint put the Debtor on notice of that claim, even though the Complaint did not include such a claim. *See Wierzbic v. County of Erie*, 2018 WL 550521, at *12 (W.D.N.Y. Jan. 25, 2018) (finding that Defendants were not prejudiced by the trespass claim asserted in the summary judgment motion because they were on notice of a trespass claim, even if trespass was not a named cause of action, since "taken together with the other allegations in the Complaint that allege Deputy Hoock entered Plaintiffs' property and remained after being asked to

leave, sets forth facts sufficient to state a claim for trespass . . . ."); *In re Kern*, 567 B.R. at 28

(finding that defendant was not prejudiced by Plaintiff's amended claim under section 523(a)(4)

where "[t]he Complaint put Kern on notice that Plaintiffs were seeking to find certain debts

arising from unpaid Benefit Fund contributions to be non-dischargeable; the amended Complaint

does just that."); *In re Citron*, No. 08–71442–AST, 2010 WL 2978062, at *6 (Bankr. E.D.N.Y.

July 23, 2010) (finding no prejudice or surprise to defendants by plaintiff's claim under section

549 of the Bankruptcy Code. "The Complaint put the Li Defendants on notice that Liberty

Mutual was seeking to recover $15,000.00 in avoidable transfers allegedly paid to the Li

Defendants . . . The Li Defendants knew at the time the Complaint was filed that they had

received payments from the Debtors, and were put on notice by the Complaint that Liberty

Mutual was seeking the avoidance of such transfers.").

      The Court finds that the Debtor will not be prejudiced by deeming the Complaint

amended to include a claim under section 727(a)(6)(A) of the Bankruptcy Code. First, the

Complaint sets forth facts and allegations concerning Counts One through Four that directly

relate to the Trustee's claim under section 727(a)(6)(A).  For example, the gravamen of Count

Two, under section 727(a)(3), and Count Four, under section 727(a)(4)(D), is that the Trustee

failed to produce books and records concerning her personal and business assets after multiple

requests from the Trustee. *See*, *e.g*., Complaint ¶ 32 (Count Two: alleging "Debtor's failure to

produce documents, as requested by the Trustee on numerous occasions"); *id*. ¶ 39 (Count Four:

alleging Debtor "withheld from the Trustee recorded information, including books, documents,

records and papers, relating to the Debtor's and her businesses' property or financial affairs, to

which the Trustee, under the Bankruptcy Code, is entitled to possession."). The Turnover Order,

entered months after the Trustee filed this adversary proceeding, orders the Debtor to produce

those documents. *See* Turnover Order at 1 (ordering Debtor to produce "copies of all books and

records relating to any and all businesses in which the Debtor held any equity interest or was an

equity holder or partner or officer or director . . . ."); *see also* 7056-1 Statement ¶ 24. Second, the

Trustee explicitly disclosed her intention to rely on section 727(a)(6)(A) in the Pre-Motion

Letter, served over a month before she filed the Motion. Pre-Motion Letter at 2 ("the Debtor has

refused to obey a lawful order of the Court, i.e., the attached [Turnover Order] . . . Based on the

foregoing, the discharge should be denied pursuant to Bankruptcy Code section 727(a)(6)(A).").

Accordingly, for these reasons, the Debtor could not credibly claim surprise or prejudice in the

face of defending against a claim under section 727(a)(6)(A) and the Court deems the complaint

amended pursuant to Rule 15 to include a claim for denying the Debtor a discharge under this

section. *See In re Citron*, 2010 WL 2978062, at \*6 (complaint deemed amended under Rule 15

to conform to evidence on summary judgment where existing allegations and claims put party on

notice of facts surrounding claim raised for the first time in summary judgment motion); *In re*

*Bressler*, No. 06-11897 (AJG), 2008 WL 686810, at \*6 (Bankr. S.D.N.Y. Mar. 10, 2008), *on*

*reargument*, 387 B.R. 446 (Bankr. S.D.N.Y. 2008) (permitting party to seek denial of debtor's

discharge under subsection of 11 U.S.C. § 727(a) raised for the first time on summary judgment

because the complaint "adequately gave [the debtor] notice of his failure to include income" and

sought to deny debtor a discharge under other subsections of 11 U.S.C. § 727(a)).

The decision to deny a debtor's discharge under section 727(a)(6)(A) is subject to the

discretion of the court. *In re St. Clair*, 533 B.R. 31, 45 (Bankr. E.D.N.Y. 2015) *aff'd sub nom.*, *St.*

*Clair v. Cadles of Grassy Meadows II, L.L.C.*, 550 B.R. 655 (E.D.N.Y. 2016). Under this

section, a plaintiff must demonstrate that the court issued an order and the debtor refused to obey

it. *In re Sofer*, 519 B.R. 28, 34-35 (Bankr. E.D.N.Y. 2014); *Hirsch v. Hirsch, (In re Hirsch),*

Adv. Pro. No. 07–01139–dem, 2009 WL 3297278, at *6 (Bankr. E.D.N.Y. Oct. 13, 2009).

However, a debtor's failure to comply with a lawful order, per se, "does not mandate the denial

of a discharge. Instead, the court 'must exercise [its] discretion whether or not to grant a

discharge, even when an order has not been followed.'" *In re Jones*, 786 Fed. App'x 309, 311-12

(2d Cir. 2019) (quoting *In re Kokoszka*, 479 F.2d 990, 997 (2d Cir. 1973)). In exercising that

discretion, the court "'should weigh the detriment to the proceedings and the dignity of the court

against the potential harm to the debtor if the discharge is denied.'" *Id.* at 312 (quoting *In re*

*Kokoszka,* 479 F.2d at 997-98). In doing so, the court should consider whether the debtor's acts

were willful, whether there is a justifiable excuse for the actions, whether the creditors were

injured by the debtor's non-compliance with the order and whether there is a way that the debtor

can make amends for her conduct. *Id. See also In re Sofer*, 519 B.R. at 35 ("once a plaintiff has

shown that the debtor violated a court order, the burden shifts to the debtor to either justify the

violation or prove that the violation did not in fact occur."). Courts may find a defendant acted

willfully under section 727(a)(6)(A) using the same analysis called for under Section

727(a)(4)(A). *See St. Clair*, 550 B.R. at 676.

The unrebutted facts demonstrate that the Debtor refused to obey the Turnover Order

because, to date, the Debtor has: (i) failed to send the Trustee 50% of the 2018 NYS Refund, (ii)

failed to produce the documents set forth in Schedule A of the Turnover Motion; and (iii) failed

to produce all books and records relating to all businesses in which she held an interest—

documents that the Trustee has now requested in writing repeatedly. *See* 7056-1 Statement ¶¶ 22-

25. These documents speak squarely to the Debtor's assets and the Trustee's ability to administer

Keswani's estate. The Court finds that Keswani's refusal to comply with the Turnover Order was

willful because her behavior evidences "a desire to avoid turning over" documents concerning

her Estate—especially in the context of the Debtor's repeated evasiveness concerning document production and disclosure of assets throughout the entirety of the bankruptcy case, as analyzed above in Count One through Count Four. *See*, *e.g.*, *id.* ¶¶ 22, 28, 36; *In re St. Clair*, 533 B.R. at 35, 46 (denying discharge under section 727(a)(6)(A) due to debtor's "pattern of obstruction"). The Court finds no excuse for the Debtor's refusal to comply with the Turnover Order, as it clearly and unambiguously sets forth the Debtor's obligations and the Debtor has provided no explanation for her conduct. *See In re Sofer*, 519 B.R. at 35 (debtor failed to justify violation of order given that it was "clear and unambiguous"). The Court also finds that the Debtor has failed to attempt to remedy her refusal to comply with the Turnover Order. The Turnover Order required her to produce the relevant documents by April 30, 2021. Turnover Order at 2. The undisputed facts demonstrate that the Debtor has failed to produce any of the documents required by the Turnover Order, even belatedly. 7056-1 Statement ¶ 25; *In re St. Clair*, 533 B.R. at 46 (denying discharge, in part, because "Debtors have never made any attempt to make amends or remedy the situation. As of trial none of the missing information had been provided."). Moreover, the Debtor has failed to respond at all to the Motion, let alone provide an explanation for her refusal to obey the Turnover Order. In light of these undisputed facts, the Court finds that the balance of the harms favors the integrity of the Court and the needs of the Trustee, as the Debtor has had ample time and opportunity to explain her behavior, but has declined to do so.[22]

---

[22]    In this regard, the Court finds *In re Jones*, 786 Fed. App'x 309 (2d Cir. 2019) instructive. In *In re Jones*, the Second Circuit affirmed the bankruptcy court's decision to deny the debtor a discharge under section 727(a)(6)(A) after the debtor refused to comply with a turnover order. *Id.* at 310. The order directed the debtor to deposit $11,250 that she failed to deposit in the estate bank account shortly after a chapter 7 trustee was appointed. *Id.* After she failed to comply, the trustee commenced an adversary proceeding to deny the debtor a discharge under sections 727(a)(2) and 727(a)(6)(A) of the Bankruptcy Code. *Id.* After a trial, the bankruptcy court entered judgment for the trustee, and the district court affirmed. *Id.* The bankruptcy court found that the debtor's refusal to comply with the order was "willful and intentional" because: (1) she did "not dispute that she was aware of the order and that she failed to comply with it," *id.* at 311; (2) she did not deny that the funds subject to the turnover order (a real estate commission check) were property of the estate, *id.*; and (3) she only tendered the funds at issue after a "persistent and unexcused delay" of approximately a year and a half after her deadline under the turnover order. *Id.* On appeal,

Accordingly, the Court finds that the Trustee has demonstrated that the Debtor's discharge should be denied under section 727(a)(6)(A) of the Bankruptcy Code.

### Conclusion

For the reasons set forth above, the Court grants the Trustee's Motion for partial summary judgment on Count One though Count Four of the Complaint and holds that the Debtor's discharge must be denied pursuant to Bankruptcy Code sections 727(a)(2), (a)(3), (a)(4)(A), and (a)(4)(D). The Court finds that the Complaint should be deemed amended under Federal Rule of Civil Procedure 15(b) to assert a claim under section 727(a)(6)(A) and grants summary judgment and denies the Debtor her discharge under that subsection as well.

The Trustee is directed to SETTLE ORDER.

Dated: New York, New York
        January 7, 2022

-

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

---

the debtor argued that that the bankruptcy court did not adequately weigh the harm she stood to suffer absent a discharge. *Id*. at 312. As support, she argued that her petition included over $15 million in liabilities compared to the $11,250 that she was ordered to turn over to the trustee, which she eventually did. *Id*. Even recognizing the "harsh punishment" of denying the discharge, the Second Circuit affirmed because the debtor's explanations for her noncompliance were "ad hoc and implausible." *Id*. For example, the debtor claimed "she did not have the money to comply with the order," yet had received a $400,000 check shortly before her deadline to comply, which she invested in real estate. *Id*. She also "took the position that she did not owe any money to the estate," even though she failed to oppose the trustee's turnover motion or otherwise object to entry of the turnover order. *Id*. The Second Circuit found that these explanations were grounded in "private determinations of the law," which offended "[t]he orderly and expeditious administration of justice by the courts." *Id*. at 313 (internal quotation omitted). As such, the court in *In re Jones* found that the "detriment to the proceedings and the dignity of the court" was "great" and upheld the denial of the discharge under section 727(a)(6)(A) of the Bankruptcy Code. *Id*.

This case is analogous and presents even stronger grounds for the Court to exercise its discretion to deny the Debtor a discharge under section 727(a)(6)(A). Unlike in *In re Jones*, where the debtor attempted to explain her refusal to follow the turnover order and complied belatedly, here, the Debtor has refused to comply with the Turnover Order without any explanation. While the Court recognizes that denying her a discharge may burden her with large debts, *see, e.g.*, 7056-1 Statement ¶ 47, the Court cannot ignore her repeated failure to comply with the Trustee's requests, refusal to respond to the merits of the Turnover Motion, refusal to obey the Turnover Order, and refusal to provide anything other than radio silence in response to the Motion—all of which offend the "expeditious administration of justice by th[is] [C]ourt[]." *See In re Jones*, 786 Fed. App'x at 313.

!